## UNITED STATES of America, Plaintiff-Appellee,

v.

## Edwin PIERCE, Defendant-Appellant.

### No. 74–1532.

United States Court of Appeals, Ninth Circuit.

Aug. 22, 1977.

---

Richard G. Sherman, Los Angeles, Cal., submitted on briefs for defendant-appellant.

William D. Keller, U. S. Atty., Earl E. Boyd, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HUFSTEDLER and WALLACE, Circuit Judges, and FREY,* District Judge.

WALLACE, Circuit Judge:

Pierce failed to comply with a condition of probation requiring him to reveal certain financial information. Probation was re-

---

* Honorable William C. Frey, United States District Judge, District of Arizona, sitting by designation.

voked and Pierce appeals, contending that the condition was violative of the Fifth Amendment and thus invalid. We affirm.

## I

In 1965 the Internal Revenue Service assessed a $248,429.80 wagering excise tax against Pierce. In response, Pierce entered into a scheme to avoid payment. He opened numerous stock brokerage accounts and then bought and sold stock, channeling the payments and receipts through a number of different bank accounts. The result was that Pierce was indicted in 1972 on thirteen counts of concealing property subject to a tax assessment in violation of 26 U.S.C. § 7206(4), eight counts of mail fraud in violation of 18 U.S.C. § 1341, and one count of conspiring to do the above acts in violation of 18 U.S.C. § 371. After Pierce pleaded not guilty, the district court granted his motion to quash the 1965 tax assessment, which provided the basis for the thirteen concealment counts, on the ground that it was derived exclusively from illegally seized evidence.

The government then obtained a second indictment in 1973. In place of the concealment counts, Pierce was charged with fourteen counts of using a manipulative and deceptive device in connection with the purchase and sale of securities in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5. He then pleaded guilty to the thirteen concealment counts of the 1972 indictment. Pursuant to a plea bargain, the remaining counts were dismissed.

Pierce was sentenced to three years' imprisonment on each count, to run concurrently, and fined $5,000 on each count, to run consecutively, for a total of $65,000. The court suspended execution of the sentence of imprisonment and placed Pierce on five years' probation, subject to certain conditions. One of the conditions, imposed at the suggestion of the government, was that Pierce

testify under oath before a representative of the United States Attorney's Office

. . . on all questions as to his financial condition relating to amounts and locations of all assets.

The district judge also stated that he would consider reducing the fine if Pierce gave testimony concerning his financial condition within two months. Through his attorney, Pierce stated that he had no objection to disclosing his financial situation immediately and that he would notice a motion to modify the fine. Pierce, in response to a direct question from the court, agreed to the terms of the judgment.

However, at the time appointed to carry out the condition of probation, Pierce reversed himself and refused to testify before the United States Attorney as to his financial condition. At the ensuing probation revocation proceeding, Pierce admitted that he had failed to comply with the challenged condition. The district judge revoked probation, implicitly rejecting Pierce's contention that the condition infringed upon his Fifth Amendment privilege against self-incrimination.

## II

The government contends that Pierce waived his Fifth Amendment privilege with regard to all conditions of probation either by pleading guilty or by accepting the conditions at the sentencing proceeding. Accordingly, it argues, he cannot now attack this condition on Fifth Amendment grounds. We disagree.

A voluntary guilty plea does not waive the right against self-incrimination for all prior activities of the defendant; it waives the privilege only with respect to the crime which is admitted. The defendant retains his privilege as to crimes for which he may still be liable. *United States v. Roberts*, 503 F.2d 598, 600 (9th Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975); *United States v. Johnson*, 488 F.2d 1206, 1209–10 (1st Cir. 1973); *see United States v. Romero*, 249 F.2d 371, 375 (2d Cir. 1957); *Burbey v. Burke*, 295 F.Supp. 1045, 1049 (E.D.Wis.1969).[1] Accordingly,

1. The cases cited by the government are not to the contrary. Both *Quijada Gaxiola v. United States*, 435 F.2d 264 (9th Cir. 1970), and *Lucero v. United States*, 425 F.2d 172 (10th Cir. 1970),

Pierce did not waive his Fifth Amendment rights with respect to crimes other than those described in the concealment counts.

The government next contends that Pierce's acceptance of probation waived any objection to self-incrimination features of the conditions. However, in *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir. 1975) (en banc), we rejected the theory that a probationer voluntarily waives his rights by failing, at the sentencing proceeding, to object properly to the conditions imposed. *Id.* at 265 & n. 15 (plurality); *id* at 274 (Wright, J., dissenting). As a practical matter, a defendant's consent to a probation condition is likely to be nominal where consent is given only to avoid imprisonment. *Id.* at 274 (Wright, J., dissenting). Of course, a truly voluntary waiver would still be effective. *See Lefkowitz v. Turley*, 414 U.S. 70, 80, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Garrity v. New Jersey*, 385 U.S. 493, 499, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). However, there is no evidence in the record before us to indicate that Pierce understood that he was waiving Fifth Amendment rights by accepting the challenged condition. Thus we do not find merit in either of the government's waiver theories.

### III

▮ In *United States v. Consuelo-Gonzalez, supra*, 521 F.2d 259, we set out a general test for evaluating probation conditions imposed pursuant to the Federal Probation Act which may impinge upon constitutional freedoms: The conditions must be "reasonably related" to the purposes of the Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement. 521 F.2d at 262. A balancing approach was articulated so as to facilitate an accommodation between the practical needs of the probation system and the constitutional guarantees of the Bill of Rights. *Id.* at 264–65.

▮ In this case, the challenged condition clearly carries out the purposes of the Federal Probation Act—rehabilitation and protection of the public. *Id.* at 263–64. By acquiring information on Pierce's present assets, the court, acting through the probation department, develops a means of detecting illicit investment activities that result in future increases in net worth. Carrying out a program of supervision in this manner is important both in terms of rehabilitation and protection of the public. The possibility of swift detection encourages the defendant to mend his ways. Hopefully this will lead to full rehabilitation. At the same time, strict supervision leads to greater protection of the public by deterring the probationer from further criminal activity.[2] *Id.* at 267; *id.* at 272

---

involved a loss of Fifth Amendment rights only with respect to the crime to which the defendant had pleaded guilty, not with respect to other possible crimes.

**2.** The written condition of probation, upon which we must judge the alleged violation, clearly supports this interpretation. See text p. 738, *infra*.

It could be argued that the oral statements of the district judge at sentencing demonstrate that the court imposed the disclosure conditions strictly as an aid to its ultimate determination of the fine to be assessed against Pierce. Although the comments of the sentencing judge with regard to a condition subsequently reduced to writing may be helpful in illuminating the purpose of the condition, it is often difficult to ascertain with certainty the intent behind unrehearsed words. It is obvious that misstatements can be made. It is even possible that the sentencing judge may change his mind with regard to the reasons for a condition. For these reasons we appropriately place our primary reliance upon the written text of the condition. Nevertheless the comments of the sentencing judge in this case may properly be interpreted as indicating that the required disclosure had a purpose other than or in addition to the assessment of an appropriate fine. He stated:

I think *the government is entitled to an examination under oath as to your assets. Beyond that,* I cannot see any need for probation supervision except approval of your residence and approval of your occupation.

(Wright, J., dissenting). Thus the condition serves the purposes of probation. A similar line of reasoning leads us to conclude that the third element of analysis under *Consuelo-Gonzalez*—the condition embraces legitimate needs of law enforcement—has been satisfied.

■ That brings us to the second *Consuelo-Gonzalez* inquiry. Directing a defendant to release information concerning his financial status may violate his Fifth Amendment right against self-incrimination. Thus, we must evaluate whether the condition imposed involves a proper accommodation between the need for information and those Fifth Amendment rights which Pierce retains. *See id.* at 264–66. That analysis requires consideration of the condition of probation on its face and then as the condition is applied.

■ As regards the condition on its face, we discussed earlier that a defendant who has pleaded guilty to a crime may no longer assert a Fifth Amendment right with respect to that crime. Still, he may raise a Fifth Amendment right with respect to the transaction constituting the crime if he is subject to further liability for that transaction. However, the burden is on the defendant to raise any Fifth Amendment claim he may have with regard to a risk of further prosecution in order to avoid imposition of a disclosure condition. Although the sentencing judge must formulate the condition to avoid the risk of compelled self-incrimination, he cannot take account of Fifth Amendment claims which are not asserted. Thus, where a defendant has pleaded guilty to a crime, a sentencing judge may impose a condition requiring the release of information concerning that crime unless the defendant raises a Fifth Amendment claim that the disclosure could lead to further prosecution.[3]

Nevertheless, a failure to raise the claim at the sentencing proceeding does not effect a waiver of the defendant's Fifth Amendment rights. *See United States v. Consuelo-Gonzalez, supra*, 521 F.2d at 265 & n. 15. Thus, even if the condition as imposed is valid on its face, based on the information presented to the sentencing judge, the defendant may still raise his Fifth Amendment claim in response to questions asked pursuant to the condition. Accordingly, we must also evaluate the condition as applied to determine if there is an infringement upon protected Fifth Amendment rights.[4]

Applying this two-prong analysis to the case before us, we note that the condition imposed by the court required Pierce to "testify under oath before a representative of the United States Attorney's Office for the Central District on all questions as to his financial condition relating to amounts and locations of all assets." The required information was clearly and directly related to the crime to which Pierce had pleaded guilty—concealing property subject to a tax assessment—and Pierce raised no objection at sentencing that release of this information would subject him to further liability.

---

A fine is warranted, a fine to be determined, however, by whatever your assets disclose.

(Emphasis added.)
Presuming, as we may, that a judge follows the law, such an interpretation is appropriate.

3. A condition which required the probationer to release information concerning past acts unrelated to the crime to which he pleaded guilty would present a different case. However, we need not reach this problem because no such condition was imposed on Pierce.

4. There is one significant difference between evaluating the condition as applied and evaluating the condition on its face: Whereas there is no waiver if the defendant fails to raise his Fifth Amendment claim at the sentencing proceeding, a failure to raise the claim in response to questions asked pursuant to the condition will result in a waiver. When asked to produce information within the scope of the condition, a defendant must either comply or provide justification for failing to do so. If he refuses to assert his Fifth Amendment right and yet refuses to answer questions, the Fifth Amendment right is lost. *See Garner v. United States*, 424 U.S. 648, 654 n. 8, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976). Where this occurs, probation may properly be revoked, notwithstanding subsequent statements that the defendant had a Fifth Amendment right which he failed to assert.

Indeed, he seemed eager to do so immediately. Thus, we find that the district judge could properly assume that the condition on its face did not require self-incrimination and the condition was valid as imposed.

 We turn now to the condition as applied. At the proceeding held pursuant to the condition, Pierce was told that the hearing was being held for the purpose of obtaining under oath a statement of his financial assets and to some extent a statement of his personal history. In response, Pierce, through his attorney, objected to the proposed deposition on Fifth Amendment and other grounds. Upon further questioning as to his intentions, Pierce stated that he would not answer any questions.[5] Whether we can properly evaluate Pierce's Fifth Amendment objection to questioning pursuant to the condition turns on whether the objection was properly raised.

In *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), the Supreme Court enunciated the standard for measuring when a witness may properly claim his right against self-incrimination, and thus refuse to respond to questions:

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal percep-

tion of the peculiarities of the case as by the facts actually in evidence."
*Id.* at 486–87, 71 S.Ct. at 918.

A proper application of this standard requires that the Fifth Amendment claim be raised in response to specific questions propounded by the investigating body. This permits the reviewing court to determine whether a responsive answer might lead to injurious disclosures. *United States v. Malnik*, 489 F.2d 682, 685 (5th Cir.), *cert. denied*, 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974). Thus a blanket refusal to answer any question is unacceptable. *United States v. Bautista*, 509 F.2d 675, 678 (9th Cir.), *cert. denied, Monsivais v. United States*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *United States v. Gomez-Rojas*, 507 F.2d 1213, 1219–20 (5th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975); *United States v. Theep*, 502 F.2d 797, 798 (9th Cir. 1974); *United States v. Malnik, supra*, 489 F.2d at 685. In this regard, we approve the analysis of the Fifth Circuit in *United States v. Malnik*:

> It is simply impossible to anticipate every question that might be asked and conclude that each would present a distinct possibility of self-incrimination if answered by the witness. This is not to say that if [the witness] testifies and produces documents, he may not object to every question. It is just that we cannot speculate and say that any response to all possible questions would or would not tend to incriminate the witness.

489 F.2d at 686. Because Pierce, in his role as a witness, made a blanket refusal to

---

5. Subsequent to the statements by Pierce's attorney Sherman concerning Pierce's objections to the deposition, Assistant United States Attorney Greenberg, who was conducting the proceeding, sought to clarify Pierce's intentions:

> MR. GREENBERG: Are you telling me that Mr. Pierce will not answer any questions?
> MR. SHERMAN: Yes, sir.

After further discussion, Greenberg inquired once again as to Pierce's willingness to comply with the condition:

> MR. GREENBERG: Just so it is absolutely clear, as I understand it then, Mr. Pierce will not answer any questions today, is that correct?

> MR. SHERMAN: He is doing so for the reasons that I have stated, yes, Mr. Greenberg.
> MR. GREENBERG: And that is your position also, Mr. Pierce?
> THE WITNESS: I do what my attorney tells me to do.
> MR. GREENBERG: Fine. Well let's terminate this proceeding then and go off the record right now.

As indicated by Greenberg's closing remarks, once it became clear that Pierce would not answer any questions, the hearing was terminated.

answer any questions, we are unable to evaluate his Fifth Amendment claim. Therefore, we need proceed no further in determining the extent of Pierce's Fifth Amendment rights in the circumstances of this case.

Pierce has failed to show that the condition infringed upon his constitutional rights. Nor has he provided any other justification for his refusal to comply with the condition of probation. Thus we hold that the district judge committed no error in revoking probation.

AFFIRMED.

HUFSTEDLER, Circuit Judge, dissenting:

I agree with the majority that Pierce did not waive his Fifth Amendment privilege either by pleading guilty or by accepting probation. I cannot agree that Pierce lost his privilege by the manner in which he raised it, nor can I agree that the condition of probation was valid under the Federal Probation Act (18 U.S.C. § 3651). The majority's contrary conclusions rest on a misreading of the record and the teachings of *Hoffman v. United States* (1951) 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 and *United States v. Consuelo-Gonzalez* (9th Cir. en banc 1975) 521 F.2d 259.

The record reveals that the district court imposed the disclosure condition as an aid to its ultimate determination of the amount of the fine that it would assess; the financial examination was not relevant to any future probationary program. The majority opinion's assumptions about the probationary functions of the ordered disclosure[1] are contradicted by the record. The district court first imposed the maximum fine ($65,-000), committed Pierce to custody until the fine was paid or otherwise discharged in due course of law, stayed the commitment until March 29, 1974, and ordered Pierce to

return to court on that day. The court explained that it "cannot see any need for probation supervision except approval of your residence and approval of your occupation. But [a] fine is warranted, a fine to be determined, however, by whatever your assets disclose." The court reminded defense counsel that after the maximum fine has been imposed "at the present time . . . you have 120 days to bring a motion to modify it." Defense counsel promptly made an oral motion to modify the fine, the prosecutor accepted the oral motion, and the court set the hearing on the motion for March 29, 1974.

Pierce appeared thereafter at the United States Attorney's office and was sworn. Upon the advice of his counsel, Pierce refused to give "a statement of [his] financial assets" to the prosecutor on the ground, *inter alia*, that his answers might incriminate him in violation of his Fifth Amendment privilege. The district court formally revoked probation for Pierce's refusal to comply with the challenged probation condition, and committed Pierce to the custody of the Attorney General for three years. Execution of the sentence was stayed pending appeal, first by the district court and then by this court.

The question before us is whether the challenged condition of probation was valid and thus provided a basis for revoking probation when Pierce refused to comply with it, asserting his Fifth Amendment privilege. Applying the reasoning of *United States v. Consuelo-Gonzalez, supra,* 521 F.2d 259, I conclude that the condition was in violation of the Federal Probation Act. In *Consuelo-Gonzalez,* we held that "the terms and conditions of probation . . . must be reasonably related to the purposes of the Act. In determining whether a reasonable relationship exists, we have found it necessary to give consideration to the purposes sought

---

1. "By acquiring information on Pierce's present assets, the court, acting through the probation department, develops a means of detecting illicit investment activities that result in future increases in net worth. Carrying out a program of supervision in this manner is important both in terms of rehabilitation and protec-tion of the public. The possibility of swift detection encourages the defendant to mend his ways. Hopefully this will lead to full reha-bilitation. At the same time, strict supervision leads to greater protection of the public by deterring the probationer from further criminal activity."

to be served by probation, the extent to which the full constitutional guarantees available to those not under probation should be accorded probationers, and the legitimate needs of law enforcement." (521 F.2d at 262.) This probation condition meets none of these prerequisites.

The issue presented is narrow: Can the court validly impose a condition of probation that compels a probationer to yield his Fifth Amendment privilege against incrimination and to testify under oath before a prosecutor about his past conduct and his current financial affairs and then revoke probation when the probationer declines to waive his Fifth Amendment privilege and to testify?[2] I think the answer is a firm "no."

The condition was not on its face directed to any probationary goal. The purpose of imposing the condition was not to rehabilitate Pierce, to help the probation department in supervising him, to shield him from future temptation or future wrongdoing, or to aid in an order of restitution.[3] The condition was not imposed to aid law enforcement officers (police) in detecting or deterring future illegal conduct. The district court explicitly and forthrightly explained that the aim was to provide the court with enough financial information to permit it to reevaluate the appropriateness of the maximum fine provisionally imposed when Pierce moved to modify the sentence, i. e., to reduce the fine.

The majority opinion correctly observes that Pierce's guilty plea did not deprive him of his Fifth Amendment privilege in respect of past transactions that could subject him to "further" criminal charges.[4] The Fifth Amendment question is not whether the testimony would have been relevant to prove the concealment counts—of course it would—but whether the same testimony could possibly tend to incriminate Pierce as to other crimes—of course it could. (E. g., Hoffman v. United States (1951) 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118) Pierce's specific concern was his exposure to charges of criminal tax evasion, commonly proved by the net worth method. The compelled testimony would obviously be potentially helpful in making a net worth case.

The majority opinion's conclusion that Pierce did not properly raise his privilege is also unsupported by the record. Pierce appeared before the prosecutor and was sworn. The prosecutor informed him, in accordance with the court's order, that the subject matter of the interrogation was "[the] amounts and locations of all [Pierce's] assets." Pierce then declined to answer, on advice of counsel, based on his Fifth Amendment privilege. There was no "blanket refusal to answer any question" because no "blanket" existed. The prosecutor told Pierce that the purpose of the "hearing" [deposition] was to obtain under oath Pierce's statement "of his financial assets," as ordered by the district court. He did not put his statement in the form of a question, but the substance of the statement was identical.[5] All we have to do is to

2. Very different questions would be posed if, absent the probation condition, the district court denied Pierce's motion to modify the sentence on the ground that Pierce had failed to testify under oath about his financial condition, or, the court, sua sponte, or on the prosecutor's motion, had set aside its order staying execution of sentence because Pierce had failed to or declined to provide the court with the same sworn testimony.

3. Although the court might have validly conditioned probation on restitution of tax liability, United States v. Weber (7th Cir. 1971) 437 F.2d 1218; 18 U.S.C. § 3651, it did not do so here, perhaps because of the necessity of a civil tax proceeding to first determine liability. (United States v. White (2d Cir. 1969) 417 F.2d 89;

United States v. Taylor (4th Cir. 1962) 305 F.2d 183.)

4. "The defendant retains his privilege as to crimes for which he may still be liable." (Majority op'n, 561 F.2d 735 at 738.)

5. The majority's reference to United States v. Malnik (5th Cir. 1974) 489 F.2d 682, and to the other cases cited is inappropriate. All of them involve some kind of blanket refusal to testify at all or to testify about unspecified subjects. To defeat a claim of privilege where there has been no vague, blanket refusal, it is incumbent upon the Government "to establish with perfect clarity that the response would not possibly have a tendency to incriminate." (McCormick's Handbook of the Law of Evidence § 139

ask whether Pierce's revelation of his assets might have incriminated him. The question is answered simply: "Yes." As *Hoffman v. United States* (1951) 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118, observed: The claim of privilege must be sustained unless it is " '*perfectly clear*, from a careful consideration of all the circumstances in the case, . . . that the answer[s] *cannot possibly* have such tendency' to incriminate." (341 U.S. at 488, 71 S.Ct. at 819 (*quoting Temple v. Commonwealth* (1881) 75 Va. 892, 898 (emphasis in original).)) In *Hoffman*, the lower court was reversed because it failed to take into consideration information outside the record that the chief occupation of some individuals involves evasion of federal criminal laws. *Pierce* presents an even stronger case because no facts outside the record need be noted.

Because I would invalidate the probation condition because it is irrelevant to the purposes of the Federal probation Act, I do not reach any constitutional issue.[6] I would vacate the order revoking probation, vacate the challenged probation condition, and remand the case to the district court for further proceedings consistent with the views herein expressed.

---

(E. Cleary ed. 1972). *Cf. United States v. Theep* (9th Cir. 1974) 502 F.2d 797, 799 ("It does not appear that [the IRS agent] made the specific inquiries required to afford the appellants the opportunity to make [the] appropriate objection . . . .").)

**6.** Assuming *arguendo* that the condition here passes statutory muster, the constitutional question is whether as a result of validly invoking his right to remain silent, the consequence of probation revocation might be imposed. (*See Lefkowitz v. Turley* (1973) 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 ("The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or crimi-

nal, formal or informal, where the answers might incriminate him in future criminal proceedings.").)

The relevant precedent on this issue includes cases such as *Garrity v. New Jersey* (1967) 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (revocation of public employment after assertion of privilege); *Spevack v. Klein* (1967) 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (disbarment); *Gardner v. Broderick* (1968) 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (revocation of public employment); *Sanitation Men v. Sanitation Comm'r* (1968) 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (revocation of public employment); and *Lefkowitz v. Turley* (1973) 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (revocation of public contracting privileges).