Michael Stevens **OWENS**,
Plaintiff-Appellant

v.

Asa D. **KELLEY**, Jr., etc. et al.,
Defendants-Appellees.

No. 80–9010.

United States Court of Appeals,
Eleventh Circuit.

Aug. 5, 1982.

James Finkelstein, Albany, Ga., for plaintiff-appellant.

Douglas Bruce Brown, Atlanta, Ga., for amicus curiae American Civ. Liberties Union Foundation of Ga., Inc.

Daniel MacDougald, III, Albany, Ga., John W. Dunsmore, Jr., Mary Beth Westmoreland, Atlanta, Ga., C. Nathan Davis, Albany, Ga., for defendants-appellees.

Before MORGAN, HILL and KRAVITCH, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This case arose when Michael Owens brought an action under 42 U.S.C. § 1983 against various defendants challenging the constitutionality of certain conditions of probation placed upon him by Judge Asa Kelley of the Superior Court of Dougherty County, Georgia.[1] The District Court denied Owens' motion for summary judgment and granted the motion for summary judgment filed by the defendants. Owens now appeals the ruling of the District Court.

The probation requirements imposed by Judge Kelley did not merely consist of perfunctory reports; instead, the conditions were obviously fashioned for the purpose of making probation a meaningful rehabilitative experience for the appellant. Pursuing such imaginative approaches is commendable. Nevertheless, all such efforts must be carefully fashioned so that they do not violate the constitutional rights of the probationer. With this in mind, we turn to the specifics of Owens' appeal.

*Background*

In September 1978 Owens pleaded guilty in Dougherty County Superior Court to two violations of the Georgia Controlled Substances Act. Judge Kelley placed Owens on probation for a period of fifteen years and imposed a number of conditions of probation. Owens' § 1983 suit challenges three of these conditions. First Owens attacks the condition which requires him to participate in a criminal rehabilitation program entitled Emotional Maturity Instruction (EMI). Owens contends that the EMI program is religiously oriented and thus violative of his First Amendment rights. Owens next challenges the probation condition that requires him to consent to warrantless searches whenever requested by a probation officer or any law enforcement officer. Owens argues that this condition violates his Fourth Amendment right to be free of unreasonable searches and seizures. Finally, Owens' complaint attacks the probation condition which requires him to submit to Psychological Stress Evaluation (PSE) examinations, said to be a type of lie detector test. Owens contends that this condition is violative of his Fifth Amendment rights.

Owens' complaint seeks declaratory and injunctive relief against enforcement of these conditions of probation. Owens also seeks monetary damages for the alleged violation of his First Amendment rights.

In denying Owens' motion for summary judgment and granting the motion of the defendants the District Court purported to find that there were no material facts in dispute.[2] We find that the District Court's award of summary judgment to the defendant was proper with regard to Owens' Fourth Amendment and Fifth Amendment claims. There is, however, a material factual dispute with regard to Owens' First

---

1. The other defendants named in the suit are Starlett Thomas, individually and in her official capacity as a probation officer of Dougherty County, Georgia; Ross Urquhart, individually and in his capacity as an employee of Dougherty County, Georgia; Wilbur McCarty individually and in his capacity as Director of the Judi-

cial Service Agency; and the County of Dougherty as a political subdivision of the State of Georgia.

2. Rule 56 Fed.R.Civ.P. requires that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and ad-

Amendment claim, such that summary judgment should not have been awarded on this issue. Accordingly, we reverse and remand the case so that this constitutional issue may be properly resolved.

### First Amendment Claims

Owens asserts that the District Court erred by not granting his motion for summary judgment on the issue of whether his First Amendment rights are violated by the probation condition which requires that he participate in the EMI program. Owens maintains that the program is pervaded with Biblical teachings such that it violates both the Establishment and Free Exercise clauses of the First Amendment. The District Court ruled that the EMI program does not violate the First Amendment because the program has a secular purpose and a primary secular effect.[3] We are not convinced, however, that the District Court had an adequate factual basis to resolve this issue on summary judgment.

"Summary Judgment should be granted only when the truth is clear, where the basic facts are undisputed and the parties are not in disagreement regarding material factual inferences that may be properly drawn from such facts." *Sinderman v. Perry*, 430 F.2d 939 (5th Cir. 1970). In the present case there is no dispute as to what constitutes the written course materials which Owens was required to read as an EMI student. The District Court examined this material and concluded that the teaching embodied in the material does not constitute religious indoctrination in violation of the First Amendment. The court erred, however, in disregarding Owens' contention that the oral instruction of the EMI course was impermissibly tainted with religious indoctrination. Owens testified in deposition that the EMI course *as taught* was religious in nature. He testified that Bert Pilgrim—one of the EMI instructors—frequently referred to and based his instructions on Biblical teachings. Owens also testified that Pilgrim recommended that the EMI students read the Bible. In an affidavit submitted to the Court, Pilgrim denied that he made any reference to the Bible during his oral EMI instructions.

■ It is clear that there was a material factual dispute as to the content and nature of the oral instruction component of the EMI course. Because of this dispute it was inappropriate for the District Court to resolve the First Amendment issue on summary judgment. The case thus must be remanded for an adequate factual explication.

■ While we intimate no position on the ultimate resolution of this issue it is clear that a condition of probation which requires the probationer to adopt religion or to adopt any particular religion would be unconstitutional. *Cf. Abbington School District v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). It follows that a condition of probation which requires the probationer to submit himself to a course advocating the adoption of religion or a particular religion also transgresses the First Amendment. In searching for the proper teaching of an EMI course it is probably difficult to locate one who can teach morality without reference to religion, but that is the task which must be accomplished. We recognize that there is a fine line between rehabilitation efforts which encourage lawful conduct by an ap-

missions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law."

**3.** The District Court stated:

The obvious purpose of the materials objected to by the plaintiff and the EMI program generally is to teach prisoners and probationers that men must live according to accepted rules of law. The program seeks to instill in these individuals an appreciation of legal, moral, and ethical principles, and proper rules of behavior, so that they may voluntarily correct their criminal nature.

*Owens v. Kelley*, Civil Action No. 78–72–ALB at 14 (M.D.Ga. Oct. 21, 1980).

peal to morality and the benefits of moral conduct to the life of the probationer, and efforts which encourage lawfulness through adherence to religious belief. Nevertheless, this is the line that must not be overstepped. It will be the function of the District Court on remand to determine whether Owens has been placed in a program that does overstep this line.

### Fourth Amendment Claim

Owens argues that the District Court erred in denying his motion for summary judgment with regard to his request for declaratory and injunctive relief to prohibit the enforcement of the condition of probation allowing warrantless searches of his person and property. This condition states:

> Probationer shall submit to a search of his person, houses, papers, and/or effects as these terms of the Fourth Amendment to the United States Constitution are defined by the courts, any time of the day or night with or without a search warrant whenever requested to do so by a Probation Supervisor or any law enforcement officer and specifically consents to the use of anything seized as evidence in a proceeding to revoke this order of probation.

Owens contends that this condition violates his Fourth Amendment rights by allowing law enforcement officers to make warrantless searches without "reasonable cause." He maintains that searches should only be conducted on "reasonable suspicion," by a probation supervisor at reasonable times, and in a reasonable manner.

■ The question of whether the Fourth Amendment's proscription of unreasonable searches and seizures is violated by a condition of probation allowing warrantless searches by probation supervisors and law enforcement officers is one of first impression for this Court. For the reasons stated below we conclude that in the present case this condition is not unconstitutional.

"A probation condition is not necessarily invalid simply because it affects a probationer's ability to exercise constitutionally protected rights." *United States v. Tonry*, 605 F.2d 144, 150 (5th Cir. 1979). In *Tonry* the Court adopted the following test to determine whether a probation condition imposed by a federal court pursuant to the Federal Probation Act, 18 U.S.C. § 3651, is unduly intrusive on constitutionally protected freedoms:

> The conditions must be "reasonably related" to the purposes of the Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement.

605 F.2d at 105 (quoting *United States v. Pierce*, 561 F.2d 735 (9th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978)).

The *Tonry* test provides an appropriate standard to judge the constitutionality of conditions of probation imposed by state courts. This standard facilitates "an accommodation between the practical needs of the probation system and the constitutional guarantees of the Bill of Rights." *United States v. Pierce*, 561 F.2d at 739. In the present case the challenged condition will meet constitutional muster if an analysis of the three factors cited in *Tonry* shows that the condition is reasonably related to the purposes of probation under Georgia law.

We first must ascertain the basic purposes of probation pursuant to Georgia law and determine whether the challenged search condition furthers these purposes. The Georgia statutory law concerning probation does not explicitly enunciate any specific purposes of probation.[4] The case law of Georgia, however, indicates that the two essential purposes of probation in Geor-

---

**4.** See Statewide Probation Act, Ga. Code §§ 27–2702 et seq.

gia, as elsewhere are the rehabilitation of the probationer, and the protection of society. *See State v. Collett*, 232 Ga. 668, 669, 208 S.E.2d 472, 474 (1974); *Inman v. State*, 124 Ga.App. 190, 192, 183 S.E.2d 413, 415 (1971).[5] In the present case these purposes are clearly carried out by the condition of probation allowing warrantless searches of Owens' person and property. Owens' sentence was imposed pursuant to his conviction of two felony charges of possession of cocaine and phencyclidine in violation of the Georgia Controlled Substances Act. The warrantless search condition seeks to rehabilitate Owens in two ways. First, it seeks to dissuade him from possessing illegal drugs by making him cognizant that unlawful possession can be discovered at any time.[6] Second, the condition further promotes Owens' rehabilitation by providing probation supervisors with a practical mechanism to determine whether rehabilitation is indeed taking place.[7] While the information obtained as a result of probationary searches may be used by probation supervisors as a basis for probation revocation, the information may also be used as a basis for deciding to provide the probationer with a greater or lesser degree of probationary supervision and counseling.

The search condition advances the probationary purpose of protecting society by enhancing the ability of law enforcement officers to detect any unlawful narcotics activities that Owens may be engaged in. Society is also protected by the deterrent effect of the condition. Since the essential task of law enforcement is the protection of society it is apparent that the condition also satisfies the third *Tonry* factor, which asks whether a challenged probation condition furthers the legitimate needs of law enforcement.

 There remains for consideration the second *Tonry* factor: the extent to which Fourth Amendment rights should be accorded to probationers. There is no question that the Fourth Amendment's protection against unreasonable searches and seizures applies to probationers. *See Morrisey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Brown v. Kearney*, 355 F.2d 199, 200 (5th Cir. 1966).[8] Probationers, however, are subject to limitations to which ordinary citizens are free. *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 (9th Cir. 1975). Such limitations are permitted because probationers have been convicted of crimes and have thereby given the state a compelling interest in limiting their liberty in order to effectuate their rehabilitation and to protect society.[9] Probationers also

5. The Georgia Supreme Court in *Collett* observed that:

 Probated and suspended sentences, upon reasonable conditions, have traditionally been used by trial judges in Georgia as effective tools of rehabilitation and serve a useful purpose in appropriate cases as an alternative to confinement. 208 S.E.2d at 474.

6. The court in *People v. Kern*, 264 Cal.App.2d 962, 965, 71 Cal.Rptr. 105, 107 (1968), similarly wrote:

 With knowledge he may be subject to a search by law enforcement officers at any time he will be less inclined to have narcotics or dangerous drugs in his possession. The purpose of any unexpected unprovoked search of defendant is to ascertain whether he is complying with his terms of probation; to determine not only whether he disobeys the law, but also whether he obeys the law. Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation.

7. In *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 (9th Cir. 1975), the court noted that:

 some forms of search by probation officers are not only compatible with rehabilitation, but, with respect to those convicted of certain offenses such as possession and distribution of narcotics, are also essential to the proper functioning of a probationary system.

8. While these cases address the rights of parolees there is no difference between the constitutional status of probationers and parolees. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

9. The Georgia Supreme Court in *Stephens v. State*, 245 Ga. 835, 268 S.E.2d 330, aptly observed that:

 A person occupies a special status while on probation, during which time his private life and behavior may be regulated by the state to an extent that would be completely untenable under ordinary circumstances.

have a diminished expectation of privacy. Because they have been convicted of crimes for which they could be incarcerated, probationers reasonably expect infringements on their privacy which law-abiding citizens neither expect nor receive.[10] We thus conclude that a probationer's Fourth Amendment right to be free from unreasonable searches and seizures is not violated by a condition of probation that permits warrantless searches of his person and property by probation supervisors and law enforcement officers.[11]

Owens suggests that if searches are to be permitted we should, in any event, require that they be based on "reasonable suspicion."[12] We decline to impose such a requirement. Unquestionably, in the case of ordinary citizens, an officer may not generally make a lawful search of a residence for evidence of a crime unless he has a search warrant issued upon probable cause to believe that the evidence in question is located at the premises named in the warrant. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct.

1509, 12 L.Ed.2d 723 (1964). Similarly an officer may not ordinarily make any sort of an examination of a citizen's person unless he has sufficient probable cause to effect an arrest. *See Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). Searches of the residence and person of probationers, however, are not conducted only when there is suspicion of a crime. As we mentioned above, the primary purpose of such searches is to deter the commission of crime and to provide supervisors with information on the progress of their rehabilitative efforts. It is clear that a requirement that searches only be conducted when officers have "reasonable suspicion" or probable cause that a crime has been committed or that a condition of probation has been violated could completely undermine the purpose of the search condition.[13]

Any search conducted pursuant to the search condition of probation must, of course, be carried out in a reasonable man-

268 S.E. at 332. The Court in *Inman v. State,* 124 Ga.App. 190, 183 S.E.2d 413, went on to note that:

> The rationale for this power is basically, of course, that the person has been convicted of a crime and would be serving a sentence but for the grace of the court. He is a prima facie risk to society.

183 S.E.2d at 415.

**10.** *See Latta v. Fitzharris,* 521 F.2d 246, 250 (9th Cir. 1975); *accord, People v. Mason,* 97 Cal.Rptr. 302, 488 P.2d 630, 633:

> [A] probationer who has been granted the privilege of probation on condition that he submit at anytime to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection.

*But see United States v. Rea,* 678 F.2d 382 (2d Cir. 1982).

**11.** *Accord, State v. Montgomery,* 115 Ariz. 583, 566 P.2d 1329 (1977); *People v. Mason,* 5 Cal.3d 759, 97 Cal.Rptr. 302, 488 P.2d 630 (1971), *cert. denied,* 405 U.S. 1016, 92 S.Ct. 1289, 31 L.Ed.2d 478 (1972); *Himmage v. State,* 88 Nev. 296, 496 P.2d 763 (1972); *People v. Richards,* 76 Mich.App. 695, 256 N.W.2d 793 (1977); *State v. Mitchell,* 22 N.C.App. 663, 207 S.E.2d 263 (1974); *State v. Schlosser,* 202 N.W.2d 136 (North Dakota 1972); *People v. Santos,* 31 A.D.2d 508, 298 N.Y.S.2d 526 (1969), *cert. denied,* 397 U.S. 969, 90 S.Ct. 1010, 25 L.Ed.2d 263 (1970).

*But see People v. Anderson,* 189 Colo. 34, 536 P.2d 302 (1975); *People v. Peterson,* 62 Mich. App. 258, 233 N.W.2d 250 (1975); *Tamez v. State,* 534 S.W.2d 686 (Tex.Cr.App.1976).

**12.** Amicus Curiae takes an even more restrictive approach arguing that searches should only be permitted upon a showing of probable cause.

**13.** The court in *Latta v. Fitzharris,* reached a similar conclusion:

> We think that one of these restrictions, necessary to the effective operation of the parole system is that the parolee and his home are subject to search by the parole officer when the officer reasonably believes that such search is necessary in the performance of his duties. The parole officer ought to know more about the parolee than anyone else but his family. He is therefore in a better position than anyone else to decide whether a search is necessary. His decision may be based upon specific facts, though they be less than sufficient to sustain a finding of probable cause. It may even be based on a "hunch," arising from what he has learned or observed about the behavior and attitude of the parolee. To grant such powers to the parole officer is not, in our view, unreasonable under the Fourth Amendment.

521 F.2d at 250.

ner and only in furtherance of the purposes of probation. The terms of the condition do not authorize any "intimidating and harassing search to serve law enforcement ends totally unrelated" to either Owens' conviction or rehabilitation. *United States v. Consuelo-Gonzalez*, 521 F.2d at 265. We thus find that on its face the condition of probation is constitutional and is capable of being lawfully applied. *See United States v. Gordon*, 540 F.2d 452 (9th Cir. 1976).

■ Owens and amicus finally argue that if warrantless searches are to be permitted we should only allow such searches by probation supervisors and not by law enforcement officers. We are not convinced, however, that such a distinction should be drawn. While the primary task of supervising Owens' probation rests with the state probation supervisors, law enforcement officers can lend legitimate assistance by conducting searches pursuant to the probation condition.[14] As noted earlier such searches are lawful so long as they are in fact conducted for probationary purposes. They cannot be conducted as "a subterfuge for criminal investigations." *United States v. Consuelo-Gonzalez*, 521 F.2d at 267.

### · *Fifth Amendment Claim*

Owens next argues that summary judgment should have been granted in his favor on the issue of whether his Fifth Amendment rights are violated by the probation condition requiring him to submit to Psychological Stress Evaluation (PSE) examinations. This condition in its entirety reads:

Probationer shall submit to and cooperate with a lie detector test, psychological stress evaluation, and/or psychometric tests at any time, and from time to time, whenever so directed by the Probation Supervisor or any other law enforcement officer.

■ Owens contends that this condition is violative of his Fifth Amendment rights in that it compels him to answer incriminating questions and exerts undue psychological pressure to induce confessions. We find these arguments to be without merit.

The condition on its face does not impinge upon Owens' Fifth Amendment rights. The condition does not stipulate that Owens must answer incriminating questions. If any question is asked during a PSE examination which Owens believes requires an incriminating answer he is free to assert his Fifth Amendment privilege,[15] and nothing in the probation condition suggests otherwise. Furthermore, there is no suggestion that there will be any attempt to use the results of a PSE examination as a basis for probation revocation. Indeed such usage of the PSE cannot be permitted.[16]

As observed by the court in *Mann v. State*, 154 Ga.App. 677, 269 S.E.2d 863, 866 (1980), "the main function [of PSE] appears to be the added psychological factor that if the probationer fails to tell the truth, he will be detected." Such a function is permissible and does not sanction coerced confessions "through psychological persuasion of an enormous magnitude." *State v. Brumley*, 320 So.2d 129 (La.1975).[17] We

14. Judge Wright in *United States v. Consuelo-Gonzalez* gives two reasons why it may be desirable to have law enforcement officers conduct probationary searches. First he mentions the practical consideration of excessive caseloads limiting the ability of probation supervisors to conduct searches, and second, he speaks of the desire to enhance mutual trust between probation supervisors and their probationers by allowing the supervisors to avoid searching the probationers and instead relying on law enforcement officers to do so. 521 F.2d at 270–271 (Wright J., dissenting).

15. *See Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818–19, 95 L.Ed. 1118:

To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.

16. *See State v. Chambers*, 240 Ga. 76, 239 S.E.2d 324 (1977).

17. Of course were the condition to be applied to coerce confessions this would amount to a Fifth Amendment violation which could not be countenanced.

agree with the court in *Mann* that "[t]he intrusion into the area of self-incrimination is no greater than a requirement that a probationer answer all reasonable inquiries of his probation officer." 269 S.E.2d at 866.

■ Finding as we do that this condition of probation does not impinge upon Owens' Fifth Amendment rights, it is unnecessary to apply the *Tonry* test to determine whether the condition is constitutionally permissible.[18] In any event, the condition clearly is reasonably related to Owens' probation in that it deters him from violating the terms of his probation by instilling in him a fear of detection.[19]

### Immunity of Defendants

The final issues to be disposed of in this case are the immunity claims of Dougherty County and Judge Asa Kelley. The District Court found that Judge Kelley was entitled to immunity but that Dougherty County was not. We agree with both rulings by the court.

■ The District Court found correctly that Judge Kelley must be dismissed as a defendant in his individual capacity because Owens' suit complains of no act by Judge Kelley except in his official capacity as judge. The District Court was also correct in finding that Judge Kelley was entitled to judicial immunity for his challenged official acts. The granting of probation and the setting of conditions of probation are clearly judicial acts involving the exercise of discretion. Judicial immunity from the equitable relief sought by Owens is thus appropriate in order to prevent "the inhibition of future exercise of judicial discretionary functions." *United Steelworkers of America, AFL–CIO v. Bishop*, 598 F.2d 408 (5th Cir. 1979).

■ In deciding that Dougherty County is not entitled to immunity the District Court relied on *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* held that:

> Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

436 U.S. at 690, 98 S.Ct. at 2035–36. We agree with the District Court's finding that the EMI program is administered pursuant to official policy of Dougherty County.[20] The county can thus be held liable for damages should the EMI program be held to violate Owens' First Amendment rights.

### Conclusion

For the foregoing reasons we conclude that the District Court erred in entering summary judgment for the defendants on Owens' First Amendment claims. We therefore reverse and remand for proceedings consistent with our decision.

**REVERSED and REMANDED.**

---

**18.** The *Tonry* test is only applied when a probation condition does impinge on a constitutional right. The test answers the question of whether, on balance, the constitutional impingement should be permitted as a reasonable result of lawful probation.

**19.** The condition may further serve the purpose of probation by the PSE results providing probation supervisors with an indication of the progress of Owens' rehabilitation.

**20.** The fact that in 1978 Dougherty County appropriated $90,000 to provide 98% of the budget of the Judicial Services Agency to operate the EMI program is persuasive evidence that the program is administered pursuant to county policy.