OPINION
In this case, Todd Buckney appeals from a conviction for escape, from revocation of community control, and from sentences imposed regarding both matters. According to the record, Buckney was originally charged in 1991 with four counts of burglary and one count of receiving stolen property (Champaign County Common Pleas Case No. 91-CR-113). After pleading guilty to one count of burglary (a second degree felony) and one count of receiving stolen property, Buckney was sentenced to not less than six nor more than 15 years on the burglary charge, and to one-and one half years for receiving stolen property. The sentences were to run concurrent with each other and consecutive to a New Jersey sentence for which Buckney was then on probation.
The precise date of Buckney's parole is not revealed in the record, but he did spend five years in prison on the 1991 charges. Subsequently, in 1997, Buckney was charged with two counts of vandalism, both fifth degree felonies. Again, these charges were filed in Champaign County Common Pleas Court (Case No. 97-CR-61). Ultimately, Buckney pled guilty to one count and the other count was dismissed. This time, the court imposed a three year community control sanction. As part of the sentence, Buckney agreed to report to his supervising probation officer, to notify the probation department of any changes in address, and so on.
In April, 1999, a third criminal case was filed in Champaign County Common Pleas Court (Case No. 99-CR-72). In the indictment, the State alleged that Buckney had committed a violation of R.C.2921.34(A)(1)(escape), by breaking detention or failing to return to detention. Although the crime was labeled a felony of the third degree, the charge should have been a felony of the second degree, to correspond with Buckley's second degree felony conviction and subsequent parole in Case No. 91-CR-113. On May 19, 1999, the escape case was placed on the court's inactive docket until Buckney could be apprehended.
Shortly after the indictment was filed, Buckney's probation officer in Case No. 97-CR-61 filed a report asking the court to suspend community control. The basis for the suspension was that Buckney's whereabouts were unknown. On May 10, 1999, the court temporarily suspended probation and issued a warrant for Buckley's arrest.
Buckney was served with papers in both cases on October 8, 1999. Between that date and January 28, 2000, a series of hearings took place for the purpose of resolving the issues in the pending cases. Eventually, on January 25, 2000, the following agreements were placed on the record. First, the State filed a bill of information adding another count in Case No. 99-CR-72, to reflect a second charge of escape under R.C. 2921.34(A)(1). The added charge was a felony of the second degree, to correspond with the degree of Buckney's prior conviction in Case No. 91-CR-113. The State then asked the court to dismiss count one of the previously filed indictment (the third degree felony escape charge).
In exchange, Buckney waived the indictment and pled no contest to the second degree felony escape charge, with the understanding that his appeal rights were preserved. Regarding the escape charge, the State agreed to recommend both a minimum sentence of two years and sentencing concurrent to Buckney's sentence for community control sanctions in Case No. 97-CR-61. Also as part of the agreement, Buckney was to admit his community control violations in Case No. 97-CR-61, and to plead no contest, again for the purpose of preserving his appeal rights. Finally, the State agreed not to oppose Buckney's judicial release from prison after he had served one year of incarceration in Case No. 99-CR-72.
After Buckney pled no contest to the charges, the court found him guilty. The court then withheld sentencing for a few days. At another hearing held on January 28, 2000, the State stressed that it had asked the court to impose the minimum sentence partly because Buckney had been honest about problems with the indictment. In fact, the State was unaware of any defect in the indictment until Buckney brought it to the State's attention. At this hearing, the court said it would follow the prosecutor's recommendation for minimum sentencing. However, the court deferred a ruling on whether the sentence in Case No. 97-CR-61 would be consecutive or concurrent.
Subsequently, on February 29, 2000, the trial court filed a judgment entry imposing a two year sentence on the escape charge and eleven months for the violation of community control sanctions. At this time, however, the court did say that the sentences would be concurrent. After a judgment entry was filed reflecting the above judgments and sentences, Buckney filed a timely notice of appeal. Buckney now raises the following assignments of error:
 I. Defendant-Appellant's conviction for escape in violation of Section 2921.34 must be reversed as Defendant-Appellant cannot be punished twice for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Constitution of the State of Ohio.
 II. Defendant-Appellant's conviction [for] escape must be reversed as the finding that Defendant-Appellant was under detention at the time of the alleged offense was improper as Section 2967.28 and Section 2967.11
which define detention and breaking detention while on parole is [sic] unconstitutional and violates [sic] the separation of powers doctrine and the due process clauses of both the United States Constitution and the Constitution of the State of Ohio.
After reviewing the record and applicable law, we find the assignments of error without merit. Therefore, we will affirm the judgment of the trial court.
 I
As was noted, Buckney claims in the first assignment of error that his conviction violates the Double Jeopardy Clauses of the United States and Ohio Constitutions, because he is being punished twice for the same offense. Specifically, Buckney received a sentence from the trial court on the escape charge, and the Ohio Adult Prison Authority (APA) has imposed or will impose post-release sanctions, including return to prison and additional prison time.
The facts presented below in this regard were somewhat sketchy. All we know about the parole violation in Case No. 91-CR-113 is that Buckney did not keep in touch with his parole officer. Based on this fact, Buckney's parole was revoked and he was sent back to prison. At the time of his sentence on the escape charge, Buckney was incarcerated in the state prison system and was awaiting a hearing before the APA on the parole violation.
Buckney told the trial court that the APA was using a new guideline system. Under the new system, Buckney would allegedly receive one year or 18 months of prison time for the parole violation. However, Buckney's attorney also noted that he did not know if these figures would apply if Buckney had another conviction, i.e., for the escape charge. Unfortunately, the APA hearing was set for March, 2000 (after the disposition of the escape charge), and the record contains no further information on what sentence Buckney may have received from the APA. Consequently, we do not know if further prison time was imposed.
However, even if the APA imposed additional, consecutive prison time, no double jeopardy violation would exist. State v. Wellbaum (Sept. 1, 2000), Champaign App. No. 2000-CA-5, unreported. In Wellbaum, we considered an identical double jeopardy argument in detail, and found that imposing both post-release control violation sanctions and a conviction and sentence for escape does not violate the Double Jeopardy Clause. Id. at pp. 6-7. Accordingly, we can reach no other conclusion here.
We do note that prosecuting parole violators for escape in the face of existing (and possibly severe) administrative sanctions is a tool that should, perhaps, be saved for the more egregious cases. While the record in this case is not detailed, the Defendant's failure to report appears to have been caused by drug problems rather than willful disregard for parole obligations. Obviously, defendants are ultimately responsible for their own behavior, and courts cannot condone drug abuse. On the other hand, addiction is a recognized disease. State v. Collier (1988),48 Ohio App.3d 99.
In Collier, the Fourth District Court of Appeals noted in a probation revocation situation that the defendant was responsible for his own conduct, even though he was a chronic alcoholic. Id. at 100. We agree with these comments. Similarly, the Defendant in this case is responsible for his own conduct. Nonetheless, Collier involved only revocation of probation and imposition of the original sentence — not the imposition of an additional criminal charge and penalty. Where a defendant's failure to report is caused by circumstances like drug or alcohol addiction, we think the State's energy might be put to better uses. Moreover, even in the absence of such circumstances, prosecution of parolee "escape" cases has been criticized. As Judge Painter noted inState v. Hagans (Oct. 13, 1999), Hamilton App. No. B-9806082, unreported:
 In common parlance, and in common sense, a charge of "escape" conjures up a jailbreak, not a failure to file a change in address. Escape is generally a major felony. It is difficult to see what is gained by these prosecutions, other than to send negligent people back to prison, not for committing another crime, but for what the prosecutor in this case called "an extremely technical violation." Do we really need to fill our prisons with "technical" violators — do we not have enough dangerous criminals to occupy the cells? But the legislature in its "wisdom" has created this situation, and we must interpret and follow the law.
Id. at p. 2 (Painter, concurring separately).
We have the same obligation to follow the law. Accordingly, we must overrule the first assignment of error.
 II
In the second assignment of error, Buckney contends that R.C. 2967.28
and R.C. 2967.11, which allegedly define detention, are unconstitutional because they violate the separation of powers doctrine and the due process clauses of both the United States Constitution and the Constitution of the State of Ohio. As expressed in the stated assignment of error, Buckney's objection is that "failure to report" is included in the definition of "detention" and "breaking detention" under R.C. 2967.28
and R.C. 2967.11. However, in the text of his argument, Buckney focuses strictly on the APA's ability to impose punishment for conduct that is also sanctioned by the judicial branch. In responding, the State has addressed both arguments. Additionally, the State has discussed R.C.2921.34 generally.
Concerning R.C. 2967.28, the State first argues that Buckney cannot challenge the statute because he was not charged for escape from supervision under post-release control. Instead, Buckney escaped from supervision under the prior parole statutes. Additionally, the State points out that Buckney was not subject to R.C. 2967.11 (the "bad-time" statute) as part of his original criminal conviction.
Buckney was originally convicted before the effective date of Senate Bill 2 and he appears to have been paroled after the effective date. Neither R.C. 2967.28 nor R.C. 2967.11 provides for retroactive application in these circumstances; in fact, R.C. 2967.28 explicitly contemplates post-release control requirements only for sentences imposed after the statute's effective date. The Ohio Supreme Court has also held that the amended sentencing provisions in Am. Sub. S.B. No. 2 do not apply to persons convicted and sentenced before July 1, 1996. See, e.g.,State ex rel. Lemmon v. Ohio Adult Parole Authority (1997),78 Ohio St.3d 186, 188. Therefore, the State is correct that Buckney's challenge does not arise in the context of any parole revocation proceedings.
On the other hand, post-release control sanctions were imposed as part of Buckney's new sentence on the escape charge and on the community control violation. Additionally, Buckney was made subject to "bad-time" penalties as part of the new sentence.
Ohio appellate districts currently disagree whether defendants may challenge the constitutionality of R.C. 2967.11 and R.C. 2967.28 before the statutory sanctions have been imposed. Compare State v. Morris (Aug. 18, 2000), Hamilton App. No. C-000027, unreported (allowing challenges on both grounds before imposition of sanctions), and State v. Williamson
(Oct. 22, 1998), Cuyahoga App. No. 73130, 73132, unreported, p. 3 (rejecting both types of challenge for lack of standing). Our own district has rejected a challenge to R.C. 2967.11 prior to actual imposition of "bad time," based on a lack of standing. State v. Davis
(Dec. 31, 1997), Miami App No. 97 CA 17, unreported, p. 5.
For purposes of the present case, we do not need to resolve this conflict. First of all, the Ohio Supreme Court has already upheld the constitutionality of R.C. 2967.28. Therefore, even if we could consider the merits of a challenge to the statute's constitutionality, we would not rule in Buckney's favor.
In Woods v. Telb (2000), 89 Ohio St.3d 504, the Ohio Supreme Court held that "R.C. 2967.28 does not violate the separation of powers doctrine or the Due Process Clauses of the United States or Ohio Constitutions."Id. at paragraph two of the syllabus. Concerning separation of powers, the Court held that the APA's "discretion in managing post-release control does not impede the function of the judicial branch." Id. at 512. In particular, the Court commented that:
 post-release control is part of the original judicially imposed sentence. Further, the powers delegated to the executive branch (APA) are no more than were granted under the prior system of parole. Finally, there is nothing in the Parole Board's discretionary ability to impose post-release control sanctions that impedes the judiciary's ability to impose a sentence. The post-release control sanctions are sanctions aimed at behavior modification in the attempt to reintegrate the offender safely into the community, not mere punishment for an additional crime, as in bad time.
Id. at 512.
In Woods, the Court also rejected the notion that due process is violated simply because the APA is authorized to conduct post-release control hearings. In this regard, the Court noted that due process requires an "opportunity to be heard in a meaningful time and in a meaningful manner." Id. at 514. Because a neutral and detached Parole Board hearing officer had conducted the hearings in Wood, the Court found that no due process violation occurred. Id.
As we mentioned, no APA hearings were held in the present case prior to the time Buckney appealed to our court. Therefore, the actual adequacy of those proceedings is not before us, and the only issue we might address is the constitutionality of the statutory process established by R.C.2967.28. However, Woods clearly indicates that the statutory process satisfies due process.
Similarly, the Ohio Supreme Court has already held that "R.C. 2967.11
violates the constitutional doctrine of separation of powers." State exrel. Bray v. Russell (2000), 89 Ohio St.3d 132, syllabus. Therefore, any reference to "bad time" in a defendant's sentence is a nullity, and the Ohio Parole Board has no power to impose "bad time" pursuant to R.C.2967.11.
Accordingly, the only remaining issue is whether failure to report is properly included within the definition of "detention" and "breaking detention" in R.C. 2967.28 and R.C. 2967.11. As a preliminary matter, we note that neither statute mentions detention or breaking detention. Instead, these terms are contained in the statutes defining "detention" and the crime of "escape." See R.C. 2921.01 and R.C. 2921.34. Because Buckney failed to properly reference these statutes in the second assignment of error, the State contends that Buckney has not adequately raised the constitutionality of the escape statute. The State also argues that even if Buckney believed that his detention was unlawful, he was still under a duty to obey judicial orders for parole.
We agree that the second assignment of error does not correctly raise the escape issue. As we said, Buckney has not even cited the right statutes. However, in reviewing the entire brief, we find that Buckney did raise this point in the first assignment of error. Specifically, when discussing double jeopardy, Buckney noted that failure to report to a parole officer was excluded as a crime at the time he was paroled. According to Buckney, such conduct was then improperly made a criminal offense after he was paroled. In our opinion, this raises a "due process" issue about the change in Buckney's status as a parolee. Therefore, while this point was raised in the context of the "double jeopardy" argument instead of the second assignment of error, we will consider it. In this regard, we think Buckney simply inserted the wrong statutory citations in the second assignment of error.
Under the escape statute:
 [n]o person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.
R.C. 2921.34(A)(1). The statutory definition of who is considered "in detention" is found in R.C. 2921.01(E). Before October 4, 1996, parolees were excluded from this statutory definition and were not subject to prosecution for escape. State v. Conyers (1999), 87 Ohio St.3d 246, 248. Specifically, before that date, R.C. 2921.01(E) defined "detention" to include "supervision * * * of a person on any type of release * * * otherthan release on parole." Id. (Emphasis in original).
Effective October 4, 1996, R.C. 2921.01(E) was amended to include parolees within those individuals who would be considered "in detention." For purposes of R.C. 2921.34(A)(1), "detention" was now defined as:
 arrest; confinement in any vehicle subsequent to an arrest; confinement in any public or private facility for custody of persons charged with or convicted of crime in this state or another state or under the laws of the United States * * * or supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution.
R.C. 2921.01(E).
Unfortunately, despite the amendment, another statute still exempted parolees from prosecution for escape, i.e., R.C. 2967.15(C)(2) provided that "` [a] furloughee or releasee other than a person who is released onparole * * * is considered to be in custody * * * and * * * may be prosecuted for the offense of escape.'" Id. at 248 (emphasis added).
Conyers involved two defendants who were charged with escape after failing to return to halfway houses as required. Id. at 247-48. At the time they "escaped," the above conflict existed between amended R.C.2921.01(E) and R.C. 2967.15(C)(2). After considering the nature of the conflicting statutes, the Ohio Supreme Court held that "during the period of October 4, 1996 to March 17, 1998, the parolee-exclusion language contained in the special provision of former R.C. 2967.15(C)(2) prevailed as an exception to the general provision of R.C. 2921.34(A)(1)." Id. at 251. As a result, the Court found that parolees who left halfway houses without permission between October 4, 1996, and March 17, 1998, could not be convicted of escape. Effectively, however, Conyers also barred prosecution of any parolee for escape, based on acts which took place between October 4, 1996, and March 17, 1998.
Conyers does not answer the precise question before us, since it involved parolees who committed acts of escape during the time the statutory conflict existed. In discussing R.C. 2967.15(C)(2), the Court did note that the temporary conflict was resolved by the amendment of R.C. 2967.15(C)(2), effective March 17, 1998. At that time, the exception for parolees was removed. Id. at 248. Therefore, at the least, Conyers
implies that parolees who commit violations after March 17, 1998, can be prosecuted for escape under the amended statute. However, the Court did not discuss this point. Instead, the Court stressed that the sole issue before it was whether parolees could be convicted for leaving halfway houses during the time the statutory conflict existed. Id.
In a decision issued prior to Conyers, the First District Court of Appeals held that parolees cannot be prosecuted for escape even under the amended version of R.C. 2967.15(C)(2). State v. Snell (May 19, 1999), Hamilton App. No. C-980588, unreported. In Snell, the defendant was on parole for sentences imposed on August 9, 1988, and then "escaped" after March 17, 1998. Id. at p. 1. The State argued that the defendant, therefore, could be prosecuted under the amended version of R.C.2967.15(C)(2). However, the First District disagreed, based on the following language in R.C. 2967.021(A):
 "Chapter 2967. of the Revised Code, as it existed prior to July 1, 1996, applies to a person upon whom a court imposed a term of imprisonment prior to July 1, 1996,
and a person upon whom a court, on or after July 1, 1996, and in accordance with law existing prior to July 1, 1996, imposed a term of imprisonment for an offense that was committed prior to July 1, 1996."
Id. (emphasis in original). Because the defendant's imprisonment was imposed before July 1, 1996, the First District applied the Revised Code as it existed before the Senate Bill 2 amendments, and affirmed dismissal of the escape indictment. Id. Judge Gorman dissented, however, commenting that the charge of escape was a "new offense" committed after the effective date of Senate Bill 2. Id. at 2.
Subsequently, in two other unreported decisions, the First District changed its position (without discussing or citing Snell). In these cases, the First District held that the defendants could be indicted for escape while on parole. This time, the court reasoned that the defendants' acts were "new criminal conduct" that occurred after the date of the amendments to the detention statutes. See State v.Trollinger (Aug. 20, 1999), Hamilton App. No. C-980824, unreported, p. 1, and State v. Zander (Aug. 27, 1999), Hamilton App. No. C-980845, unreported, p. 1. The Trollinger and Zander decisions were issued percuriam and involved Judge Gorman (the dissenting judge in Snell), as well as two judges who did not participate in Snell.
In contrast, the Eighth District Court of Appeals has relied on the concept that later statutory amendments cannot substantively alter a parolee's legal relations with the state. State v. Glaude (Sept. 2, 1999), Cuyahoga App. No. 73757, unreported, discretionary appeal not allowed, 87 Ohio St.3d 1478. In Glaude, the defendant was originally convicted in 1990 for burglary and was paroled on June 25, 1996. Thus, the defendant was paroled before the amended definition of "detention" in R.C. 2921.01(E) became effective, i.e., October 4, 1996. Subsequently, after numerous parole violations, including failure to report, the defendant was declared a parole-violator at large on March 10, 1997. He was then prosecuted for "escape" under R.C. 2921.34(A). Id. at p. 1.
On appeal, the Eighth District Court of Appeals vacated the conviction. The court first commented that when the defendant was paroled on June 25, 1996, he was clearly not under "detention," as the term was then defined. Id. at 2. As we have mentioned, R.C. 2901.01(E) defined detention at that time as "supervision * * * of a person on any type of release * * * other than release on parole." Id. (emphasis added). The court also noted that "detention" historically was equated with being in legal custody. Id.
After making these observations, the Eighth District found that the terms and conditions of the defendant's parole could not be altered by the statutory amendment to R.C. 2921.01(E). In this regard, the court focused on the legislature's failure to indicate that the amendment was intended to apply to circumstances pre-dating the October 4, 1996 effective date. Id. Further, the court relied on prior Ohio Supreme Court authority which held a parolee to the terms of his parole, even though a later statutory enactment would have changed a parole provision in his favor. Id., citing State v. Benton (1998), 82 Ohio St.3d 316. In this regard, the Eighth District said that:
 [w]e conclude as a matter of statutory construction that Glaude was not under "detention" while he was on parole and he could not be deemed by legislative fiat to be under detention thereafter. Indeed, nothing in the record suggests that Glaude had any notice that his relation with the state may have been substantively altered by the amended legislation. Because Glaude was not under detention while on parole, it follows that he was not subject to prosecution for escape for breaking detention under R.C. 2921.34.
Id. at 3. Judge Porter of the Eighth District dissented, commenting that the amendment was not retrospectively applied because it was only being used in connection with conduct that occurred after the effective date of the act. Id. at 4.
Glaude was issued before the decision in Conyers. Like the defendant inGlaude, one defendant in Conyers had been paroled before the effective date of Senate Bill 2. 87 Ohio St.3d at 247-48. Therefore, under the reasoning in Glaude, the legislature should not have been able to alter this defendant's relationship with the state by amending the detention statute. However, the Ohio Supreme Court did not mention such a theory. Presumably, if the Court felt that the legislature was precluded from changing existing conditions of parole, it would have said so. To the contrary, however, the Court's remarks imply that this type of argument would not be given much weight. Specifically, the Court mentioned that the legislature had solved the "temporary conflict" in statutes by removing the parolee exception in R.C. 2967.15(C)(2). Id. at 248. Again, if the Court believed the legislature's power was constrained in some way, we think it would have said so.
Our own district has previously addressed the issue of whether a parolee may be held liable for escape under R.C. 2921.34. See State v.Bishop (Oct. 9, 1998), Greene App. No. 98 CA 3, unreported. In Bishop, the defendant was convicted of two offenses in 1994, and was sentenced in 1995 to prison. After probation was unsuccessful, the defendant was imprisoned in 1996, and was released on parole in February, 1997. He was then indicted for escape on September 2, 1997, after failing to report to his parole officer. Id. at p. 1. Following an appeal of the escape conviction, we affirmed.
We first found that the defendant was "under detention" because his failure to report took place after the effective date of the amendment to R.C. 2921.01(E). Id. at 2. Additionally, we rejected the defendant's claim that pre-Senate Bill 2 law controlled. In this regard, the defendant relied on the fact that his conviction and imprisonment on the original offense predated the bill's effective date. However, we discounted the importance of this fact. Instead, we felt the defendant's conduct in failing to report to his parole officer was an "independent act" and would be prosecuted under the law in effect at the time of the violation. Id. at 2. The Sixth District Court of Appeals has since agreed with our analysis. See State v. Estis (June 11, 1999), Lucas No. L-98-1373, unreported.
Bishop was issued before the Conyers decision, and certain observations we made in Bishop are no longer correct. For example, we said that former R.C. 2967.15(C)(2) merely exempted parolees from being considered "in custody" and did not effect a parolee's status or his susceptibility to escape charges. Bishop, at p. 2. However, Conyers clearly indicates that former R.C. 2967.15(C)(2) did affect a parolee's susceptibility to escape charges, because it excepted parolees from the escape statute.87 Ohio St.3d at 249. Furthermore, the parolee in Bishop would not have been liable for escape under the Conyers decision. Specifically, his "escape" actions took place before R.C. 2967.15(C)(2) was amended, i.e, before March 17, 1998. 87 Ohio St.3d at 251. Despite these changes, our conclusion in Bishop about the independent nature of a parolee's acts are still valid, and we maintain the view that a defendant's conduct should be prosecuted under the law in effect at the time of the violation.
Notably, Bishop involved a defendant who was paroled after the effective date of Senate Bill 2. By contrast, the defendant in Glaude was paroled before the Bill's effective date. In Glaude, the Eighth District focused on this fact, by stating that if the defendant had been paroled after Senate Bill 2's effective date, the court would be inclined to agree that he could be indicted for escape. Glaude, at 3, citing Bishop. Thus, Bishop and Glaude do not conflict; they simply considered different issues.
As a final point, our decision in the present case also does not conflict with Glaude, since Buckney's alleged acts of "escape" took place after the effective date of all pertinent changes in the law. As we mentioned earlier, the precise date of Buckney's release on parole was not disclosed. However, the record does indicate that Buckney spent five years on prison on the original criminal charges. Consequently, because Buckney was conveyed to a state correctional institute on the original charges on December 4, 1991, he would have been paroled, at the earliest, around December 4, 1996. This was after the effective date of Senate Bill 2. Moreover, Buckney's conduct in failing to report took place in April and May, 1999, also after the effective date of the amendments to R.C. 2921.01(E) and R.C. 2967.15(C)(2).We are aware of the statement in Buckney's brief that failure to report to a parole officer was excluded as a crime at the time Buckney was paroled. However, the record simply contains no evidence to support this assertion. In fact, as we said, the only evidence before us is that Buckney was paroled after October 4, 1996. We must decide appeals on the basis of the record submitted to the trial court, not with new material added on appeal. See, e.g., State v. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus. Accordingly, based on Conyers, Bishop, and even Glaude, Buckney was properly charged with escape under R.C. 2921.34(A)(1).
In light of the preceding discussion, the second assignment of error is overruled. Because all assignments of error have been overruled, the judgment of the trial court is affirmed.
 _______________ BROGAN, J.
GRADY, P.J., and FAIN, J., concur.