[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 316.]

THE STATE OF OHIO, APPELLANT, *v.* BENTON, APPELLEE.

[Cite as *State v. Benton*, 1998-Ohio-386.]

*Constitutional law—Search and seizure—Warrantless search of parolee, his motor vehicle, or place of residence performed by parole officer at any time pursuant to a condition of parole is constitutional.*

A warrantless search performed pursuant to a condition of parole requiring a parolee to submit to random searches of his or her person, motor vehicle, or place of residence by a parole officer at any time is constitutional.

(No. 97-897—Submitted March 25, 1998—Decided July 8, 1998.)

APPEAL from the Court of Appeals for Montgomery County, No. 15850.

_____

{¶ 1} On July 5, 1995, defendant-appellee, Lemuel F. Benton, was paroled from his sentence for two counts of aggravated trafficking and one count of engaging in corrupt activity. As one of the conditions of his parole, defendant signed a "Conditions of Supervision" form provided by the Ohio Adult Parole Authority. At the time of signing, these conditions were explained to the defendant. One of the conditions stated: "I agree to a search without warrant of my person, my motor vehicle, or my place of residence by a parole officer at any time."

{¶ 2} On January 17, 1996, defendant's parole officer, Joseph B. Moorefield, went to defendant's residence intending to search it. He was accompanied by Parole Officer Tom Sandy. They had no warrant. When the two officers arrived, they noticed a woman in an unidentified vehicle in the defendant's driveway. The officers knocked on defendant's door and waited approximately four minutes before the defendant answered the door.

{¶ 3} When the defendant answered the door, Officer Moorefield advised the defendant that they were going to conduct a search of his residence. For safety

reasons, Officer Moorefield asked the defendant to sit down so he could observe him while Officer Sandy conducted the search. Once defendant was seated, Officer Sandy began searching the residence and Officer Moorefield observed the defendant. However, Officer Moorefield left defendant alone for a moment while he checked another room to be sure it was secure. While Officer Moorefield looked in that room, defendant got up from his seat and went outside.

{¶ 4} The defendant walked out to the unidentified vehicle where, Officer Moorefield testified, it appeared that the defendant handed something through the window to the woman in the car. Officer Moorefield then advised the defendant that he was under arrest because he had violated a parole condition by failing to comply with the direct order of his parole officer, namely, the order to remain seated.

{¶ 5} After arresting defendant, Officer Moorefield took defendant back into the house and searched the car and found some knives. Meanwhile, Officer Sandy searched the house and found a second parolee, who was also under Officer Moorefield's supervision, hiding in the defendant's basement. The second parolee admitted to Officer Moorefield that he had been the driver of the unidentified car and that the knives found in the car were his. Officer Moorefield arrested the second parolee and the Dayton police transported both parolees to the Montgomery County Jail.

{¶ 6} After the Dayton officers departed with the two parolees, Officers Moorefield and Sandy continued their search of defendant's residence. Officer Moorefield found a large sum of cash underneath a mattress in one of the bedrooms and Officer Sandy found a large amount of marijuana in another room.

{¶ 7} Defendant was indicted on one count of trafficking in marijuana pursuant to R.C. 2925.03(A)(4). On March 8, 1996, defendant's attorney filed a motion to suppress the evidence obtained during the search of defendant's home.

After the April 5, 1996 hearing, the trial court granted the motion to suppress on April 8, 1996.

{¶ 8} The Montgomery County Court of Appeals affirmed the judgment of the trial court, finding that "evidence gained during a search of a parolee by a parole officer may be admitted in an independent criminal prosecution against the parolee as long as the parolee's Fourth Amendment rights were not violated." However, the court found that the defendant in this case did not consent to a search of his home without reasonable cause. The court found that because the search was random, it violated the Fourth Amendment's guarantee against unreasonable searches.

{¶ 9} The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, *Carley J. Ingram* and *Cheryl A. Ross,* Assistant Prosecuting Attorneys, for appellant.

*John H. Rion & Associates*, *John H. Rion* and *Jon Paul Rion*, for appellee.

_____

**Lundberg Stratton, J.**

{¶ 10} The issue presented in this case is whether the Fourth Amendment's proscription of unreasonable searches and seizures is violated by a random search of the residence of a parolee who, as a condition of parole, consented to warrantless searches by parole officers at any time. For the reasons stated below, we conclude that such searches are constitutional.

APPLICATION OF FOURTH AMENDMENT

{¶ 11} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." See, also, Section 14, Article I, Ohio Constitution.

{¶ 12} We must start with the basic principle that prisoners have forfeited many of their rights and privileges upon incarceration. Some of these privileges are regained upon parole, but the defendant is still subject to limitations because a convicted criminal has no inherent or constitutional right to be conditionally released before the expiration of a validly imposed sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex* (1979), 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675; *State ex rel. Hattie v. Goldhardt* (1994), 69 Ohio St.3d 123, 125, 630 N.E.2d 696, 698; *State ex rel. Carrion v. Ohio Adult Parole Auth.* (1998), 80 Ohio St.3d 637, 687 N.E.2d 759. Nonetheless, because the state has an interest in rehabilitation and reintegration of the prisoner into society, prisoners are often offered an opportunity for parole. The government is "offering to allow the prisoner to regain his or her freedom in return for a promise to abide by rules which, to a greater or lesser extent, limit the exercise of fundamental rights." *Carchedi v. Rhodes* (S.D.Ohio 1982), 560 F.Supp. 1010, 1016.

{¶ 13} The presence of the offender in the community creates the need for special supervision. *Griffin v. Wisconsin* (1987), 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709. Supervision "is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Id.* at 875, 107 S.Ct. at 3169, 97 L.Ed.2d at 718. "Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer* (1972), 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494. "These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. * * * These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed." *Griffin*, 483 U.S. at 875, 107 S.Ct. at 3169, 97 L.Ed.2d at 718. See, also, *Carchedi*, 560 F.Supp. at 1015.

**{¶ 14}** In this case, the defendant, a parolee, as part of the conditions of his parole, read and signed an Ohio Adult Parole Authority form entitled "Conditions of Supervision." One of the conditions enumerated in the form required the defendant, if he chose to sign the form and be paroled, to "agree to a search without warrant of [his] person, [his] motor vehicle, or [his] place of residence by a parole officer at any time." Defendant concedes that by signing the form, he waived his right to have searches conducted pursuant to a warrant.

**{¶ 15}** The United States Supreme Court has already held that warrantless searches of parolees[1] without probable cause do not violate the Fourth Amendment. *Griffin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709. However, the defendant contends that the Fourth Amendment still imposes a requirement that those searches be "reasonable." The defendant cites *Griffin* as support for that proposition. However, *Griffin* dealt with the narrow issue of whether a state regulation was constitutional. In upholding the regulation, the *Griffin* court found that requiring "reasonable grounds" pursuant to a valid state regulation was constitutionally permissible in a search of a probationer's home.[2] In rejecting "probable cause" as the standard, the Supreme Court stated, "[W]e think it enough if the information provided indicates, as it did here, only the likelihood * * * of facts justifying the search." *Griffin,* 483 U.S. at 880, 107 S.Ct. at 3172, 97 L.Ed.2d at 722.

**{¶ 16}** However, *Griffin* did not deal with a search conducted subject to the parolee's consent to be searched without a warrant "at any time." Therefore, we

---

1. This court has already found that there is no material difference between probationers and parolees in the context of constitutional guarantees. *State v. Roberts* (1987), 32 Ohio St.3d 225, 229, 513 N.E.2d 720, 723.

2. The Wisconsin regulations made it a violation of probation to refuse to consent to a home search, but the opinion never dealt with the effect of this regulation on a search.

must examine whether, as a condition of parole, a parolee can consent to random searches.[3]

## CONSENT TO SEARCH

{¶ 17} Conditions of parole must be reasonably and necessarily related to the government's interest in rehabilitating the parolee and in protecting society from recidivism. *Carchedi*, 560 F.Supp. 1010. We find that the consent-to-search condition at issue meets those twin goals. Consent searches are part of the standard investigatory techniques of law enforcement. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 231, 93 S.Ct. 2041, 2050, 36 L.Ed.2d 854, 865. "The primary purpose of [searches of parolees' residences] is to deter the commission of crime and to provide supervisors with information on the progress of their rehabilitative efforts. It is clear that a requirement that searches only be conducted when officers have 'reasonable suspicion' or probable cause that a crime has been committed or that a condition of probation has been violated could completely undermine the purpose of the search condition." *Owens v. Kelley* (C.A.11, 1982), 681 F.2d 1362, 1368.

{¶ 18} Being on parole with a consent-to-search condition is "akin to sitting under the Sword of Damocles: ' " With knowledge he may be subject to a search by law enforcement officers at any time, [the parolee] will be less inclined to have narcotics or dangerous drugs in his possession. *The purpose of an unexpected, unproved search of defendant is to ascertain whether he is complying with the terms of probation; to determine not only whether he disobeys the law, but also whether*

---

3. In Ohio, there was no statutory authority for a search of a parolee's residence until November 9, 1995, four months after the defendant agreed to the conditions of his supervision. After the defendant signed the Conditions of Supervision form, but while he was on parole and before the search in question was conducted, the General Assembly enacted R.C. 2967.131(B). 146 Ohio Laws, Part I, 125. This statute requires field officers conducting a search to have reasonable grounds to believe that the releasee is not abiding by the law or otherwise is not complying with the terms and conditions of his or her conditional release. However, this statute did not exist when the defendant signed the Conditions of Supervision form. Accordingly, this statute cannot create a right that the defendant had already waived.

*he obeys the law.* Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation." ' " (Emphasis added.) *In re Anthony* (1992), 4 Cal.App.4th 1000, 1002, 6 Cal.Rptr.2d 214, 215, fn. 1, quoting *People v. Kern* (1968), 264 Cal.App.2d 962, 965, 71 Cal.Rptr. 105, 107, and *People v. Bravo* (1987), 43 Cal.3d 600, 610, 238 Cal.Rptr. 282, 288, 738 P.2d 336, 342.

{¶ 19} To require a warrant would decrease the deterrent effect of the supervisory relationship. *Griffin*, 483 U.S. at 878, 107 S.Ct. at 3171, 97 L.Ed.2d at 720. As the United States Supreme Court pointed out, "[t]he [parolee] would be assured that so long as his illegal (and perhaps socially dangerous) activities were sufficiently concealed as to give rise to no more than reasonable suspicion, they would go undetected and uncorrected." *Id.* at 878, 107 S.Ct. at 3171, 97 L.Ed.2d at 720.

{¶ 20} In *State ex rel. Wright v. Ohio Adult Parole Auth.* (1996), 75 Ohio St.3d 82, 661 N.E.2d 728, the defendant signed a similar condition of parole stating that his parole officer could search his person, vehicle, or residence at any time. The defendant cites a footnote in *Wright* stating that "a state parolee may be searched, pursuant to a consent provision in his parole terms, if his parole officer reasonably believes a search is appropriate." *Id.* at 93, 661 N.E.2d at 737, fn. 1. The defendant construes this to mean that the search, though consented to, must still have a reasonable basis. However, we interpret the footnote to refer only to the officer's subjective belief that a search was appropriate. The search issue in *Wright* was never appealed and not at issue. At issue was whether the fruits of that illegal search could nevertheless be used in a parole revocation hearing—and this court clearly held that they could. *Wright*, 75 Ohio St.3d 82, 661 N.E.2d 728, paragraph two of the syllabus.

{¶ 21} In this case, the defendant was paroled after a drug conviction. To aid in the goal of rehabilitation, parole officers must be able to monitor the progress

of parolees. Of course, the terms of the conditions of parole "do not authorize any 'intimidating and harassing search to serve law enforcement ends totally unrelated' to either [the parolee's] conviction or rehabilitation." *Owens*, 681 F.2d at 1369, quoting *United States v. Consuelo-Gonzalez* (C.A.9, 1975), 521 F.2d 259, 265. Absent some evidence of a motive of ill will or intent to harass, we must trust a parole officer's judgment as to when a search may be appropriate, as sometimes only very subtle signs may lead a parole officer to suspect that the parolee is engaging once again in illegal activities. To that end, random searches serve as an important tool in rehabilitation.

**{¶ 22}** Because the defendant agreed to the condition of supervision by signing it, thereby consenting to warrantless searches of his place of residence by a parole officer at any time, the defendant waived his Fourth Amendment protection against random searches. Therefore, evidence from that search is admissible.

**{¶ 23}** The defendant testified at the suppression hearing that he had no choice but to sign a waiver as a condition of his parole, thereby implying that the waiver was not voluntary. We recognize that "[w]aivers of constitutional rights not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States* (1970), 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 756.

**{¶ 24}** The defendant in this case voluntarily waived his Fourth Amendment rights when he signed the consent-to-search term allowing his parole officer to search his residence, vehicle, and person without a warrant at any time. The record reveals that the defendant received an explanation of what conditions would be imposed. In addition, the defendant testified that he read the form before he signed it. He testified that his signing the consent-to-search condition was not a free choice. While it is true that the defendant was presented with choosing either to consent to warrantless searches at any time or to remain incarcerated, the fact

8

that the defendant must decide between two unattractive choices does not invalidate the waiver.

{¶ 25} As the *Carchedi* court stated: "In deciding to accept the terms of a commutation and parole, a prisoner is forced to choose between the prospect of continued incarceration and the prospect of an agreement which may somehow restrict his or her constitutional rights. The government, in effect, is offering to allow the prisoner to regain his or her freedom in return for a promise to abide by rules which, to a greater or lesser extent, limit the exercise of fundamental rights. In this respect the transaction is no different from other agreements in which the government conditions its grant of a substantial benefit on the relinquishment of a known constitutional right." *Id.*, 560 F.Supp. at 1016.

{¶ 26} In fact, as *Griffin* pointed out, warrantless searches have been upheld in situations with less compelling public policy reasons than those involving a convicted criminal out on parole. For example, the United States Supreme Court has held that "government employers and supervisors may conduct warrantless, work-related searches of employees' desks and offices without probable cause, *O'Connor v. Ortega* [(1987)], 480 U.S. 709 [107 S.Ct. 1492, 94 L.Ed.2d 714], and that school officials may conduct warrantless searches of some student property, also without probable cause, *New Jersey v. T.L.O.* [(1985)], 469 U.S. 325 [105 S.Ct. 733, 83 L.Ed.2d 720]. We have also held, for similar reasons, that in certain circumstances government investigators conducting searches pursuant to a regulatory scheme need not adhere to the usual warrant or probable-cause requirements as long as their searches meet 'reasonable legislative or administrative standards.' *Camara v. Municipal Court* [(1967)], 387 U.S. 523, 538 [ 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930, 941]. See *New York v. Burger* [(1987)], 482 U.S. 691, 702-703 [107 S.Ct. 2636, 2644, 96 L.Ed.2d 601, 614]; *Donovan v. Dewey* [(1981)], 452 U.S. 594, 602 [101 S.Ct. 2534, 2539, 69 L.Ed.2d 262, 271]; *United States v.*

*Biswell* [(1972)], 406 U.S. 311, 316 [92 S.Ct. 1593, 1596, 32 L.Ed.2d 87, 92]." *Griffin*, 483 U.S. at 873, 107 S.Ct. at 3168, 97 L.Ed.2d at 717.

{¶ 27} Further, the defendant's decision to sign the waiver was sufficiently knowing and intelligent. The terms of the condition are readily understandable. A commonsense reading of the condition is sufficient to provide the defendant with fair notice of what conduct is prohibited and what actions should be expected. See *State v. Jones* (1990), 49 Ohio St.3d 51, 53, 550 N.E.2d 469, 471. The plain language of the phrase "at any time" means just that: a parole officer may conduct random searches of the defendant's person, vehicle, or residence without a warrant. Therefore, we find that the defendant's decision to sign the Conditions of Supervision form was sufficiently voluntary, knowing, and intelligent. *Brady*, *supra*.

{¶ 28} Therefore, we hold that a warrantless search performed pursuant to a condition of parole requiring a parolee to submit to random searches of his or her person, motor vehicle, or place of residence by a parole officer at any time is constitutional. We find that the trial court improperly excluded the evidence from the defendant's criminal prosecution. Accordingly, we reverse the judgment of the court of appeals and remand the cause for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER, J., dissents.

———————————

**Pfeifer, J., dissenting.**

{¶ 29} I am thankful that the enactment of R.C. 2967.13(B) limits the scope of this decision. Under the statute, a parole officer may conduct a warrantless

search of a parolee or his property if the officer has reasonable grounds to believe that the parolee is not abiding by the law or complying with the terms of his parole.

**{¶ 30}** R.C. 2967.131(B) strikes a reasonable middle ground between random searches and searches made only upon probable cause. The statute recognizes the protections the Fourth Amendment gives to *all* citizens as well as the necessity of placing some restriction upon a parolee's freedom. This court should have done the same.

_____