[Cite as *State v. Bays*, 2011-Ohio-3021.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 10-CA-42 |
| LARRY E. BAYS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Ashland County Municipal
                                Court Case No. 10-CRB-00261AB


JUDGMENT:                       AFFIRMED

DATE OF JUDGMENT ENTRY:         June 13, 2011


APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

W. DAVID MONTAGUE 0015203                   DAVID R. STIMPERT 0080871
Assistant Director of Law                  10 E. Main Street
1213 E. Main Street                        Ashland, Ohio 44805
Ashland, Ohio 44805

*Delaney, J.*

{¶1}   Defendant-Appellant, Larry Bays, appeals the judgment of the Ashland County Municipal Court, convicting him of one count of cultivation of marijuana, a misdemeanor of the first degree.  The State of Ohio is Plaintiff-Appellee.

{¶2}   On February 11, 2009, Evelyn Bays, wife of Appellant, signed a parole agreement indicating that she agreed to be subject to a warrantless search of her residence, person, and property at any time while she was on parole.  Specifically, the terms that she agreed to stated:

{¶3}   "I agree to a search without warrant of my person, my motor vehicle, or my place of residence by a supervising officer or other authorized representative of the Department of Rehabilitation and Correction at any time. * * *

{¶4}   "Notice pursuant to section 2959.131 of the Revised Code, officers of the Adult Parole Authority may conduct warrantless searches of your person, your place of residence, your personal property, or any other property of which you have been given permission to use if they have reasonable grounds to believe that you are not abiding by the law or terms and conditions of your supervision."

{¶5}   Michelle Flaherty, an Adult Parole Authority officer ("APA"), supervised Evelyn Bays.  She accepted supervision of Evelyn because both Evelyn and Appellant agreed to the above terms of supervision.  Flaherty stated that these terms were explained verbally to both Evelyn and Appellant and that a written copy of these instructions was given to Evelyn.

{¶6}   Officer Flaherty received information from an informant who was a former employee of Appellant's tobacco shop that was connected to the Bays' residence, that

Appellant was growing marijuana in the basement of the Bays' residence.    The informant told Flaherty that Appellant told him that he was growing the marijuana in his basement.

{¶7}    Based upon the information received, Officer Flaherty and Officer Kimberly Marcelli went to the Bays' residence, where they advised both Evelyn and Appellant that they were going to look around.  Evelyn stated that it was fine for them to look around and Appellant did not make any statement to the contrary, nor did he state that the officers could not look around.

{¶8}    The officers observed a lock on the door to the basement.  Evelyn and Appellant told differing stories as to why there was a padlock on the door.  Initially, both Evelyn and Appellant stated that the landlord had placed the lock on the basement and that they did not have access to the basement.  They were unable, however, to provide the landlord's name or contact information.  Subsequently, Appellant told the officers that he sprayed for bugs in the basement and that was why there was a lock on the basement.

{¶9}    Evelyn then stated that she did not go into the basement because she was scared of it; however, she admitted to having possessions and canned food stored in the basement.  Appellant stated that Evelyn did not go into the basement, but Evelyn eventually testified at the suppression hearing that she did not go into the basement because she was afraid of it.

{¶10}  The APA officers contacted the Ashland County Sheriff's Department, who dispatched a deputy to remove the lock.  The officers then observed a marijuana growing operation in the basement.

{¶11} Appellant was asked several questions at the Bays' residence by Ashland County Sheriff Lieutenant Scott Smart. Appellant was pacing around the house and also walked outside of the house after being instructed to stay in a particular area of the home. He admitted that the marijuana in the basement was his. At the time he made this statement, he had not been read his *Miranda* warnings; however, he was never arrested on the date in question.

{¶12} Officer Flaherty testified that Appellant was not placed into custody, but that he was told not to leave for officer safety reasons. Appellant was never handcuffed. The officers did find the key to the padlock beside a loaded gun that was next to a place that Appellant kept going to stand beside while the officers searched the residence.

{¶13} Two complaints were filed against Appellant, charging him with one count of possession of marijuana, in violation of R.C. 2925.11(A), and one count of cultivation of marijuana, in violation of R.C. 2925.04(A). Appellant pled not guilty to both charges.

{¶14} A motion to suppress was filed on behalf of Appellant and a hearing was held, wherein Appellant argued that he did not specifically grant consent for the officers to search the residence, even though his wife did; and the officers' questioning of Appellant was tantamount to a custodial interrogation.

{¶15} The trial court denied Appellant's motion on November 18, 2010, finding that pursuant to *State v. Benton* (1998), 82 Ohio St.3d 316, 695 N.E.2d 757, and R.C. 2967.131(C), the warrantless search of the Bays' residence was proper, and that the interaction between the officers and Appellant was not custodial.

{¶16}  On November 29, 2010, Appellant entered a change of plea, and pled no contest to the charge of cultivation of marijuana, a misdemeanor of the first degree. The possession of marijuana charge was dismissed.  The court found Appellant guilty of the cultivation charge and sentenced him to thirty days in jail with fifteen days suspended.

{¶17}  Appellant now appeals and raises two Assignments of Error:

{¶18}  "I. THE ASHLAND MUNICIPAL COURT ERRED BY NOT SUPPRESSING THE EVIDENCE GATHERED AS A RESULT OF THE UNCONSTITUTIONAL SEARCH OF APPELLANT'S RESIDENCE, BECAUSE SAID SEARCH WAS CONDUCTED WITHOUT A WARRANT AND WITHOUT HIS CONSENT, IN VIOLATION OF APPELLANT'S FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES.

{¶19}  "II.  THE ASHLAND MUNICIPAL COURT ERRED BY NOT SUPPRESSING A CONFESSION MADE BY THE APPELLANT, SAID CONFESSION BEING MADE WHILE IN CUSTODY, PRIOR TO MIRANDA WARNINGS, AND WHICH FOLLOWED STATEMENTS MADE BY AN OFFICER THAT WOULD NORMALLY BE UNDERSTOOD BY THE AVERAGE LISTENER AS CALLING FOR A RESPONSE AND THEREFORE, IN VIOLATION OF HIS FOURTH AND FIFTH AMENDMENT RIGHTS."

I.

{¶20}  In his first assignment of error, Appellant argues that the trial court erred by failing to suppress evidence gathered as a result of the search of his residence.  We disagree.

{¶21} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 713 N.E.2d 1. During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, (1996), 75 Ohio St.3d 148, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Metcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.

{¶22} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 Ohio B. 57, 437 N.E.2d 583; and *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether

the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 623, 620 N.E.2d 906.

{¶23} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507. An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio* (1968), 391 U.S. 1, 88 S.Ct. 1503. Because the "balance between the public interest and the individual's right to personal security," *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 878, 95 S.Ct. 2574, tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Sokolow* (1989), 490 U.S. 1, 7, 109 S.Ct. 1581 (quoting *Terry*, supra, at 30). In *Terry*, the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, also, *State v. Chatton* (1984), 11 Ohio St.3d 59, 61, 463 N.E.2d 1237.

{¶24} A warrantless search performed pursuant to a condition of parole requiring a parolee to submit to random searches of his or her person, motor vehicle, or place of residence by a parole officer at any time is constitutional. *State v. Benton* (1998), 82 Ohio St.3d 316, 695 N.E.2d 757.

{¶25} As the *Benton* court noted, "prisoners have forfeited many of their rights and privileges upon incarceration. Some of these privileges are regained upon parole, but the defendant is still subject to limitations because a convicted criminal has no

inherent or constitutional right to be conditionally released before the expiration of a validly imposed sentence. Gre*enholtz v. Inmates of Nebraska Penal & Correctional Complex* (1979), 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675; *State ex rel. Hattie v. Goldhardt* (1994), 69 Ohio St.3d 123, 125, 630 N.E.2d 696, 698; *State ex rel. Carrion v. Ohio Adult Parole Auth.* (1998), 80 Ohio St.3d 637, 687 N.E.2d 759. Nonetheless, because the state has an interest in rehabilitation and reintegration of the prisoner into society, prisoners are often offered an opportunity for parole. The government is "offering to allow the prisoner to regain his or her freedom in return for a promise to abide by rules which, to a greater or lesser extent, limit the exercise of fundamental rights." *Carchedi v. Rhodes* (S.D.Ohio 1982), 560 F.Supp. 1010, 1016."

{¶26} Allowing offenders to be present in the community before the expiration of their sentence creates the need for special supervision. *Benton*, supra, citing *Griffin v. Wisconsin* (1987), 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709. Supervision "is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." Id. at 875, 107 S.Ct. at 3169, 97 L.Ed.2d at 718. "Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer* (1972), 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494. "These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. * * * These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed."

*Benton*, supra, quoting *Griffin*, 483 U.S. at 875, 107 S.Ct. at 3169, 97 L.Ed.2d at 718. See, also, *Carchedi*, 560 F.Supp. at 1015.

{¶27} In this case, Evelyn Bays, a parolee, and Appellant's wife, as part of the conditions of her parole, read and signed an Ohio Adult Parole Authority form entitled "Conditions of Supervision." One of the conditions enumerated in the form required Evelyn, if she chose to sign the form and be paroled, to "agree to a search without warrant of [her] person, [her] motor vehicle, or [her] place of residence by a parole officer at any time." By signing the form, Evelyn waived her right to have searches conducted pursuant to a warrant. Appellant was also present when this form was read to Evelyn and agreed to the terms and conditions of her parole since he lived with her.

{¶28} Conditions of parole must be reasonably and necessarily related to the government's interest in rehabilitating the parolee and in protecting society from recidivism. *Carchedi*, 560 F.Supp. 1010.

{¶29} In the present case, Evelyn gave consent to search her residence and Appellant did not object to that search. We find that the consent-to-search condition at issue meets the twin goals set forth in *Carchedi*. Consent searches are part of the standard investigatory techniques of law enforcement. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 231, 93 S.Ct. 2041, 2050, 36 L.Ed.2d 854, 865. "The primary purpose of [searches of parolees' residences] is to deter the commission of crime and to provide supervisors with information on the progress of their rehabilitative efforts. It is clear that a requirement that searches only be conducted when officers have 'reasonable suspicion' or probable cause that a crime has been committed or that a

condition of probation has been violated could completely undermine the purpose of the search condition." *Owens v. Kelley* (C.A.11, 1982), 681 F.2d 1362, 1368.

{¶30} "Being on parole with a consent-to-search condition is 'akin to sitting under the Sword of Damocles: ' " With knowledge he may be subject to a search by law enforcement officers at any time, [the parolee] will be less inclined to have narcotics or dangerous drugs in his possession. The purpose of an unexpected, unproved search of defendant is to ascertain whether he is complying with the terms of probation; to determine not only whether he disobeys the law, but also whether he obeys the law. Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation." ' " (Emphasis added.) *In re Anthony* (1992), 4 Cal.App.4th 1000, 1002, 6 Cal.Rptr.2d 214, 215, fn. 1, quoting *People v. Kern* (1968), 264 Cal.App.2d 962, 965, 71 Cal.Rptr. 105, 107, and People v. Bravo (1987), 43 Cal.3d 600, 610, 238 Cal.Rptr. 282, 288, 738 P.2d 336, 342.

{¶31} "To require a warrant would decrease the deterrent effect of the supervisory relationship. *Griffin*, 483 U.S. at 878, 107 S.Ct. at 3171, 97 L.Ed.2d at 720. As the United States Supreme Court pointed out, "[t]he [parolee] would be assured that so long as his illegal (and perhaps socially dangerous) activities were sufficiently concealed as to give rise to no more than reasonable suspicion, they would go undetected and uncorrected." Id. at 878, 107 S.Ct. at 3171, 97 L.Ed.2d at 720." *Benton*, supra, at 320.

{¶32} "Absent some evidence of a motive of ill will or intent to harass, we must trust a parole officer's judgment as to when a search may be appropriate, as sometimes

only very subtle signs may lead a parole officer to suspect that the parolee is engaging once again in illegal activities. To that end, random searches serve as an important tool in rehabilitation." Id.

{¶33} In the present case, Officer Flaherty had evidence that Evelyn's husband was cultivating marijuana in their basement, as was reported to her by an employee of the tobacco shop that Appellant and Evelyn ran. Such evidence is sufficient to supply the necessary basis for the APA to search a parolee's home. Moreover, since Appellant did not object to the search, we do not need to consider whether he had the standing to prevent the search from occurring.

{¶34} Further, since Appellant was present during the reading of Evelyn's parole agreement and he agreed to the terms of that agreement, we find that he also agreed to be bound to the search provisions in that parole agreement.

{¶35} Appellant's first assignment of error is overruled.

II.

{¶36} In Appellant's second assignment of error, he argues that the trial court erred by failing to suppress statements that he made to officers while they were at his residence after the marijuana was discovered. We disagree.

{¶37} The existence of an arrest is dependent upon the existence of four requisite elements:

{¶38} "(1) An intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *State v. Barker* (1978), 53 Ohio St.2d

135, 7 O.O.3d 213, 372 N.E.2d 1324, paragraph one of the syllabus, certiorari denied (1978), 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260.

{¶39} Furthermore, an arrest, in the technical, as well as the common sense, signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime. *United States v. Bonanno* (S.D.N.Y.1960), 180 F.Supp. 71; *Patterson v. United States* (C.A.5, 1951), 192 F.2d 631, 633 (dictum), certiorari denied, 343 U.S. 951, 72 S.Ct. 1043, 96 L.Ed. 1352. See, also, 5 American Jurisprudence 2d 698, Arrest, Section 3; American Law Institute, Code of Criminal Procedure, Section 18.

{¶40} In the present case, no arrest occurred. The officers testified that Appellant was told to stay within a certain place in the residence for officer safety purposes. Given the fact that a loaded weapon was found by the key to the padlock and that Appellant kept drifting towards that area in the home, we find this to be a legitimate reason to limit Appellant's movement in his home.

{¶41} Moreover, Appellant made statements to Lieutenant Smart inside Appellant's home and outside his residence. Appellant was never handcuffed, nor was he arrested after he admitted that the marijuana in the basement was his. He was not even arrested after the loaded weapon was found next to the key to the basement lock. Quite simply, there was no custodial interrogation and therefore, *Miranda* rights were not required. Additionally, Appellant was never arrested on the charges, but instead was issued a summons days after the search was completed.

{¶42} Appellant's second assignment of error is overruled.

{¶43}  For the foregoing reasons, the judgment of the Ashland Municipal Court is affirmed.

By: Delaney, J.

Gwin, P.J. and

Hoffman, J. concur.

_____

HON. PATRICIA A. DELANEY

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

[Cite as *State v. Bays*, 2011-Ohio-3021.]

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| LARRY E. BAYS | : | |
| | : | |
| Defendant-Appellant | : | Case No. 10-CA-42 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Ashland County Municipal Court is affirmed. Costs assessed to Appellant.

_____

HON. PATRICIA A. DELANEY

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN